UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

PATRICK DEFILIPPO,   **MEMORANDUM & ORDER**

               Petitioner,   **09-CV-4153 (NGG)**

-against-

UNITED STATES OF AMERICA,

               Respondent.

-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

     Petitioner Patrick DeFilippo brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255. Following a jury trial, DeFilippo was convicted of racketeering conspiracy; conducting an illegal gambling business; illegal gambling conspiracy; and extortionate collection of credit conspiracy in violation of 18 U.S.C. §§ 1962, 1955, 371, and 894(a)(1), respectively. This court sentenced DeFilippo to forty years' imprisonment. DeFilippo now seeks to vacate or correct his sentence on the grounds that he received ineffective assistance of counsel in violation of the Sixth Amendment. Specifically, DeFilippo alleges that counsel: (1) erroneously advised him, both orally and in writing, that he would receive a maximum sentence of twenty years' imprisonment; (2) did not advise him that the court could impose consecutive sentences totaling forty years' imprisonment or more; (3) did not discuss the strengths or weaknesses of the Government's case with him prior to his decision to proceed to trial; and (4) did not make any specific recommendation as to whether he should proceed to trial or attempt to arrange an acceptable plea. For the reasons set forth below, DeFilippo's Petition is DENIED.

I. **BACKGROUND**

On August 14, 2003, a grand jury charged DeFilippo and co-defendants Joseph Massino and John Joseph Spirito with, among other things, murder in-aid-of racketeering for the March 18, 1999, murder of Bonanno family captain Gerlando ("George") Sciascia, in violation of 18 U.S.C. § 1959(a)(1). See Indictment, No. 03-CR-929 (NGG) (E.D.N.Y. Aug. 14, 2003), Dkt. 1.

A week later, the Government filed a memorandum in support of its request for a permanent order of detention of DeFilippo ("Detention Memorandum"). (See Detention Mem. (Dkt. 5-2).) The Government noted that DeFilippo was eligible for the death penalty if convicted of the Sciascia murder. (Id. at 2.) If the death penalty was not authorized, the Detention Memorandum stated that DeFilippo would face life imprisonment. (Id.) The Detention Memorandum cited extensive crime scene, surveillance, documentary, and other evidence implicating DeFilippo's involvement in the Sciascia murder. (Id. at 7-11.)

At that stage, DeFilippo was represented by several attorneys, including Richard W. Levitt, who ultimately represented DeFilippo at trial. (Am. Stipulation (Dkt. 19) ¶ 2.) In early 2004, Levitt's associates prepared a written analysis of DeFilippo's sentencing exposure ("Sentencing Analysis") based on the various charges pending against him. (See Sentencing Analysis (Ex. 1 to Am. Stipulation (Dkt. 19)) at 7-9.) The Sentencing Analysis was prepared to provide an estimate of a possible sentence in the event that DeFilippo was acquitted of the Sciascia murder and related charges. (Id. at 7.) However, it took care to note that DeFilippo was charged "as the triggerman in Sciascia's murder," and that conviction for the murder "would require a minimum sentence of life imprisonment." (Id.) Moreover, the Sentencing Analysis

2

boldly cautioned: "**but note** that even acquitted conduct may be considered if proved to the court's satisfaction by a preponderance of the evidence." (Id. at 8 (emphasis in original).)

Assuming that DeFilippo was acquitted of the Sciascia murder, and that the court did not take acquitted conduct into consideration, the Sentencing Analysis calculated a likely sentencing range of 70-87 months in prison. (Id.) It noted that "in rare instances" a sentencing judge may depart from the minimum or maximum statutory sentence, "in this case probation or 20 years imprisonment[, respectively.]" (Id. at 9.) DeFilippo "spent a great deal of time studying" the Sentencing Analysis. (DeFilippo Supp. Aff. (Dkt. 22-1) ¶ 19.)

In late 2005 and early 2006, counsel for DeFilippo and co-defendant Spirito entered into discussions with the Government concerning a potential plea bargain. (Am. Stipulation ¶ 5.) Throughout these discussions, the Government insisted that any potential plea offer was contingent on the defendant pleading guilty to, or at least admitting his complicity in, the Sciascia murder. (Id.) Following these discussions, the Government extended Spirito a formal offer of a recommended twenty years' imprisonment sentence in exchange for his guilty plea to the charge of racketeering conspiracy, which he later accepted. (Id. ¶¶ 5-6.)

DeFilippo, however, was never extended a formal written plea offer. Although AUSA Greg Andres discussed the possibility of a potential plea in exchange for a recommended sentence of fifteen years' imprisonment, any agreement, like Spirito's, was specifically contingent on DeFilippo pleading guilty to, or admitting his complicity in, the Sciascia murder. (Andres Stipulation (Dkt. 18-2) ¶ 5.) DeFilippo refused to do either. As Andres recounted, Levitt specifically advised him that "DeFilippo refused to admit to any culpability in Sciascia's murder." (Id.) Indeed, as Levitt would later explain at sentencing, DeFilippo was unwilling to plead guilty to the murder, "even if [the Government offered him] a walk." (Sentencing Tr.

(Dkt. 20-10) at 20.) At some point during plea discussions, DeFilippo generally proposed to plead guilty in exchange for a sentence of twelve years' imprisonment. (Am. Stipulation ¶ 9.) But, because this oral offer did not include any admission of DeFilippo's involvement in the Sciascia murder, the Government rejected the offer. (Andres Stipulation ¶ 5.) Because an admission of culpability was a critical prerequisite to any potential plea offer, Andres never obtained supervisory approval to make a formal plea offer to DeFilippo. (Id. ¶ 6.)

Having refused to admit his involvement in the Sciascia murder, DeFilippo proceeded to trial. (Am. Stipulation ¶ 12.) On May 9, 2006, a jury found DeFilippo guilty of one count of racketeering conspiracy, three counts of illegal gambling and bookmaking, and one count of extortionate credit collection conspiracy. See United States v. Massino, 546 F.3d 123, 127 (2d Cir. 2008). It acquitted him of two counts of substantive extortionate credit collection, and was unable to reach a unanimous verdict on the three counts pertaining to the Sciascia murder. Id.; see also Jury Verdict, No. 03-CR-929 (NGG) (E.D.N.Y. May 9, 2006), Dkt. 749.

In anticipation of sentencing, the Probation Department filed a Pre-Sentence Report ("PSR") that calculated DeFilippo's combined offense level to be 48—a level that included DeFilippo's murder of Sciascia as relevant conduct proven by a preponderance of the evidence. (See Gov't Mem. (Dkt. 5) at 6 (citing PSR).) The Government sought a 55-year term of imprisonment, the statutory maximum. (Id.) Among other things, DeFilippo objected to the consideration of the Sciascia murder as relevant conduct. (Id.)

Sentencing was held before this court on March 14, 2007. At the start of the hearing, DeFilippo himself confirmed that he had reviewed the entire PSR, and affirmed his satisfaction with his counsel's assistance. (See Sentencing Tr. at 2-3.) Although the jury had not reached a verdict on the counts pertaining to the Sciascia murder, the court agreed with the Probation

Department that DeFilippo was involved in the murder by a preponderance of the evidence.[1] (Id. at 26-28.) As Levitt's Sentencing Analysis cautioned (see Sentencing Analysis at 8), the court considered the murder in the calculation of DeFilippo's guideline range. (See Sentencing Tr. at 26, 30.) This court then sentenced DeFilippo to forty years' imprisonment: twenty years for the racketeering conspiracy charge; five years for each of the three illegal gambling charges; and five years for the extortionate collection of credit charge, all of which to run consecutively. (Id. at 46.)

On September 25, 2009, DeFilippo filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255. (See Pet. (Dkt. 1).) He seeks to vacate or correct his forty-year prison sentence on the grounds that he received ineffective assistance of counsel, in violation of the Sixth Amendment, because his counsel allegedly: (1) advised him, both orally and in writing, that he would receive a maximum sentence of twenty years' imprisonment; (2) did not advise him that, even if he were not convicted of the Sciascia murder, the court could sentence him to consecutive sentences adding up to forty years' imprisonment or more; (3) did not discuss the strengths or weaknesses of the Government's case with him prior to his decision to proceed to trial; and (4) did not make any specific recommendation as to whether he should proceed to trial or attempt to arrange an acceptable plea. (See DeFilippo Aff. (Dkt. 1) at 3-7; Am. Stipulation at 4-5.)

On May 17, 2012, the court ordered a hearing on DeFilippo's claims. (See May 17, 2012, Mem. & Order (Dkt. 16).) Rather than take advantage of the opportunity to testify before this court and present witnesses, DeFilippo proposed that the matter be resolved

---

[1] Among other evidence presented at trial, Bonanno crime family underboss Salvatore Vitale testified that DeFilippo was involved in the planning of the murder, lured Sciascia to the murder location, and then shot Sciascia in the head and chest. Bonanno crime family captain Dominick Cicale corroborated this testimony, explaining that DeFilippo was the designated shooter. After the murder, Sciascia was found with a note in his pocket bearing DeFilippo's name and what appeared to be the location of the murder. (See Sentencing Tr. at 26-28.)

5

without a hearing on the basis of a stipulated record. (See June 6, 2012, Def. Ltr. (Dkt. 17).) The Government agreed (see Sept. 4, 2012, Gov't Ltr. (Dkt. 18) at 1), and the parties filed a Joint Stipulation on September 4, 2012, which was amended on September 5, 2012. (See Am. Stipulation.)

## II. STANDARD OF REVIEW

Section 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), permits a prisoner who was sentenced in federal court to "move the court which imposed the sentence to vacate, set aside, or correct the sentence" when he claims "the right to be released upon the ground that the sentence was imposed," among other reasons, "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "Because the Sixth Amendment provides criminal defendants with the right to *effective* assistance of counsel, inadequate representation is a basis for relief under section 2255." Morales v. United States, 635 F.3d 39, 42-43 (2d Cir. 2011) (citing Strickland v. Washington, 466 U.S. 688, 686 (1984)).

To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy a stringent two-prong test: (1) he must show that "counsel's performance was deficient," that is, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) the petitioner must show that, "the deficient performance prejudiced the defense . . . [by producing] errors . . . so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Under the "prejudice" prong, the evidence presented must be considered in light of "the totality of the circumstances," and the court must inquire "into the record as a whole" to determine "whether a reasonable probability exists that absent counsel's error, the outcome of the proceeding would have been different." Id. at 680; see United States v. Arteca, 411 F.3d 315, 321 (2d Cir. 2005).

6

In the context of plea offers, a petitioner must show "that but for the ineffective advice of counsel there is a reasonable probability that . . . the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances[.]" Lafler v. Cooper, 132 S.Ct. 1376, 1385 (2012).

The defendant bears the burden of establishing both that his counsel was deficient and that he was prejudiced. United States v. Birkin, 366 F.3d 95, 100 (2d Cir. 2004). However, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

## III. DISCUSSION

Because the court concludes that DeFilippo has failed to satisfy that he was prejudiced under Strickland's second prong, it does not address whether his counsel was deficient.[2] See Reich v. United States, No. 07-CV-2406 (NGG), 2010 WL 10373, at *7 (E.D.N.Y. Jan. 4, 2010).

To establish prejudice, a petitioner must show that it is reasonably likely "that but for counsel's unprofessional errors, the result of the proceeding would have been different." Arteca, 411 F.3d at 320. A "self-serving and conclusory statement" by a petitioner is "insufficient in itself to show prejudice in the context of guilty pleas." Id. at 322 (citations omitted). A petitioner's self-serving statement can establish prejudice only if it is "credible in light of all the relevant circumstances." See Puglisi v. United States, 586 F.3d 209, 215-16 (2d Cir. 2009). The Second Circuit has found that a petitioner's statement is sufficiently credible where it is

---

[2] DeFilippo focuses primarily on his claim that counsel erroneously calculated his sentencing exposure. (See Def Mem. (Dkt. 23) at 12-19, 21-29; see also DeFilippo Aff. ¶¶ 14-20, 24-26; Am. Stipulation ¶¶ 11-14, 18-20.) However, he also claims that his counsel did not discuss the strengths or weaknesses of the Government's case with him, and did not make any specific recommendation as to whether he should proceed to trial or attempt to arrange an acceptable plea. (See DeFilippo Aff. ¶¶ 21-23; Am. Stipulation ¶ 21.) Even assuming that his counsel was deficient in these respects, DeFilippo still must show that but for these errors there is a reasonable probability that he would have accepted a plea offer. As set forth below, he has failed to do so.

7

accompanied by some "objective evidence," such as a "significant sentencing disparity," that the petitioner would have accepted the proposed plea offer if properly advised. See Pham v. United States, 317 F.3d 178, 182-83 (2d Cir. 2003); United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998).

Aside from a self-serving statement, factors affecting whether a petitioner has proven prejudice in the plea bargaining context include whether a formal plea offer existed, see Lafler, 132 S.Ct. at 1385 ("[A] defendant must show that . . . the prosecution would not have withdrawn [the plea] in light of intervening circumstances . . . ."), and whether the petitioner was aware of the possibility of the sentence that he ultimately received, see Arteca, 411 F.3d at 320 ("To satisfy the second prong of Strickland in the context of plea negotiations . . . the issue is whether the defendant was aware of actual sentencing possibilities . . . .").

Here, DeFilippo swears "he had absolutely no idea" that he was facing more than twenty years' imprisonment, and that "had he been counseled about the actual sentence exposure [facing him], he would have pleaded guilty." (Am. Stipulation ¶ 14.) These statements, examined alongside the record as a whole, are insufficient to prove prejudice as required by Strickland for two reasons: (1) DeFilippo was undoubtedly aware that he faced a possibility of more than twenty years' imprisonment if he proceeded to trial; and (2) DeFilippo has failed to establish that there was a reasonable probability that he would have pled guilty.

A. **Knowledge of Actual Sentencing Possibilities**

To help establish prejudice, a petitioner may point to "a significant disparity between the sentencing exposure in [a] plea offer and the actual sentence imposed at trial[,]" in addition to his self-serving claim that he was unaware of the consequences of proceeding to trial. See Puglisi, 586 F.3d at 217. But even so, when a "defendant's specific claim is that counsel has misled him

as to the possible sentence which might result from a plea . . . the issue is whether the defendant was aware of *actual sentencing possibilities*." Arteca, 411 F.3d at 320 (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992) (emphasis added)).

DeFilippo claims that he believed the maximum sentence he faced going into trial was twenty years' imprisonment. (Am. Stipulation ¶ 13.) He was sentenced to forty years' imprisonment. (Sentencing Tr. at 26.) The difference between twenty years' and forty years' imprisonment may very well constitute a "significant sentencing disparity." See Pham, 317 F.3d at 182-83 (noting that the difference between "a plea offer of 78 to 97 months and a sentence after trial of 210 months, which is more than double" could constitute a significant sentencing disparity). But the record conclusively establishes that at the time DeFilippo elected to proceed to trial, he was aware that he faced a possible sentence of much longer than twenty years.

First, both DeFilippo's counsel and the Government informed him that he risked a sentence of life imprisonment if convicted of the counts pertaining to the Sciascia murder. The first clause of the Sentencing Analysis provided by DeFilippo's counsel—a document that DeFilippo "spent a great deal of time studying" (DeFilippo Supp. Aff. ¶ 19)—explicitly states that "a conviction for the murder of George Sciascia would require a minimum sentence of life imprisonment" (Sentencing Analysis at 7). Similarly, the Government's Detention Memorandum instructed DeFilippo that he was eligible for the death penalty, or, in the alternative, life imprisonment. (See Detention Mem. at 2.) Moreover, DeFilippo was informed that, even if he was acquitted on the charges pertaining to the Sciascia murder, the murder could still be considered by the court at sentencing. This warning rang loud and clear in the Sentencing Analysis: "**but note** that even acquitted conduct may be considered if proved to the court's

9

satisfaction by a preponderance of the evidence." (Sentencing Analysis at 8 (emphasis in original).)

Second, at sentencing, DeFilippo never indicated any surprise or lack of awareness concerning the 55-year sentence the Government was seeking. (See Sentencing Tr. at 2-3.) He noted that he had "gone over everything" in the PSR—which calculated a maximum sentence of 55 years—with his counsel, and that his counsel had answered all of his questions about it. (Id. at 3.) In light of this uncontested evidence, DeFilippo's statements that he was unaware that he risked a sentencing of more than twenty years' imprisonment, including the possibility of consecutive sentences adding up to forty years or more, are not credible.[3]

The choice for DeFilippo was never between a fifteen-year plea and a maximum of twenty years' imprisonment. Rather, the choice was whether to plead guilty in exchange for a potential fifteen-year sentence, or to proceed to trial and risk a sentence of life imprisonment if convicted of the Sciascia murder. DeFilippo chose the latter.

B.   **Likelihood of Pleading Guilty**

Even if DeFilippo was not aware of the actual sentencing possibilities he faced, he has still failed to show that there is a reasonable probability that he would have pled guilty if not for his counsel's allegedly deficient conduct. See Cullen v. United States, 194 F.3d 401, 404-05 (2d Cir. 1999) (stating that in examining prejudice, a court must determine whether a petitioner has established "the requisite reasonable probability that [he] would have pled guilty" by considering whether the petitioner "would have accepted [a] plea bargain if he had been fully informed of its terms and accurately advised of the likely sentencing ranges [he faced]"). Such a showing

---

[3] This is especially true given that DeFilippo had no "persuasive reason for doubting the strength of the government's case against him." See Arteca, 411 F.3d at 321. In fact, the record portrays a strong case, with ample evidence and accomplice testimony connecting DeFilippo to the Sciascia murder. (See Detention Mem. at 7-11; Sentencing Tr. at 26-28; supra n.1.)

10

presupposes both the existence of a formal plea offer, see Lafler, 132 S.Ct. at 1385, and the petitioner's willingness to plead guilty, see Zandi v. United States, 460 F. App'x 51, 53 (2d Cir. 2012) (noting that the appellant "continue[d] to proclaim his innocence" and that such a factor "undermine[d] [his] bare assertion that he would have accepted a plea agreement if properly advised"); see also Cullen, 194 F.3d at 407 (noting that an appellant's "insistence on his innocence is a factor relevant to any conclusion as to whether he has shown a reasonable probability that he would have pled guilty"). Neither of those factors is present here.

1. Absence of a Formal Plea Offer

Although the Government discussed with DeFilippo's counsel the possibility of a potential plea in exchange for a recommended fifteen-year sentence, any plea was specifically contingent on DeFilippo pleading guilty to the murder of Sciascia, or admitting his complicity in the murder. (Andres Stipulation ¶ 5.) DeFilippo was unwillingly to do either. As Andres explained, Levitt specifically advised him that "DeFilippo refused to admit to any culpability in Sciascia's murder." (Id.; see also Sentencing Tr. at 20.) Although during plea discussions DeFilippo proposed an offer of twelve years' imprisonment (Am. Stipulation ¶ 9), the Government rejected this offer because it was void of any declaration by DeFilippo that he would plead guilty to, or otherwise admit his involvement in, the Sciascia murder (Andres Stipulation ¶ 5.) Consequently, Andres never sought supervisory approval, and never extended DeFilippo a formal written plea offer. (Id. ¶ 6.) Thus, the lack of a formal plea offer strongly weighs against a finding that DeFilippo would have pled guilty. See Lafler 132 S.Ct. at 1385.

2. DeFilippo's Insistence on Innocence

Even if a formal plea offer had existed, DeFilippo has still failed to prove that he was truly willing to plead guilty because he consistently maintained his innocence throughout his

case. As DeFilippo's counsel stated at sentencing (without any objection), DeFilippo was unwilling to plead guilty to the Sciascia murder "no matter what," "even if [the Government offered him] a walk." (Sentencing Tr. at 20.) DeFilippo's co-defendant, Spirito, testified that DeFilippo "was adamant that he did not participate in [the Sciascia murder] and did not want to plead guilty to it." (Supp. Aff. (Dkt. 22-2) ¶ 11.) In light of this evidence, DeFilippo has further failed to establish the requisite reasonable probability that he would have pled guilty. See Cullen, 194 F.3d at 404-05; Reich, 2010 WL 10373, at *7 (rejecting an ineffective assistance of counsel claim where the defendant "consistently maintained that he was innocent" throughout pre-trial investigations, and where his trial testimony showed that "he would never have pleaded guilty or accepted a non-prosecution agreement, had the Government offered one").

\*     \*     \*

The ultimate question under Strickland's prejudice prong is whether there is a reasonable probability that DeFilippo would have pled guilty but for his counsel's alleged ineffective assistance. All of the evidence in this case—including the bold cautioning in counsel's Sentencing Analysis, the Government's Detention Memorandum, the nonexistence of a formal plea offer, and DeFilippo's persistent insistence on his innocence through pre-trial negotiations and beyond—far outweighs DeFilippo's lone, self-serving affidavit.[4] Therefore, DeFilippo has failed to satisfy his burden and his Petition for Writ of Habeas Corpus must be denied.

---

[4] This court ordered a hearing on DeFilippo's claims on May 17, 2012. (See May 17, 2012, Mem. & Order.) Rather than take advantage of the opportunity to testify before this court and present witnesses, DeFilippo proposed that the matter be resolved without a hearing on the basis of a stipulated record. (See June 6, 2012, Def. Ltr.) Because DeFilippo has chosen not to testify, the court cannot gauge his credibility, which may, in theory, have been able to outweigh all the other evidence weighing against a finding of prejudice. DeFilippo's lone affidavit is all this court can examine in his favor.

## IV. CONCLUSION

For the foregoing reasons, DeFilippo's Petition for Writ of Habeas Corpus is DENIED. Because DeFilippo has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
March _1_, 2013

NICHOLAS G. GARAUFIS
United States District Judge